CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/27/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KELLY BUCK, <br><br> *Plaintiff*, <br><br> v. <br><br> MODINE MANUFACTURING COMPANY <br><br> **SERVE**: Corporation Service Company <br> 100 Shockoe Slip Fl 2 <br> Richmond, Virginia 23219-4100 <br><br> *Defendant*. | Civil Action No. **6:23CV00039** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Kelly Buck ("Ms. Buck" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Modine Manufacturing Company ("Modine" or "Defendant") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Virginia's Human Rights Act, Va. Code Ann. § 2.2-3900, et seq., Va. Code Ann. § 40.1-27.3, and the common law of Virginia.

**I.     INTRODUCTION**

1. This case involves sex-based discrimination and retaliation against whistleblower-plaintiff, Ms. Buck. Plaintiff has evidence that Defendant, through its authorized agents: (1) discriminated against Ms. Buck on the basis of her sex and (2) terminated her very soon after she complained about this discrimination under the pretext of "behavioral issues."

## II.     JURISDICTION AND VENUE

2. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq., Virginia's Human Right Act, Va. Code Ann. § 2.2-3900, et seq., and the common law of Virginia (Bowman claim).

3. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5(f) and 2000e06(a), and 28 U.S.C. §§ 1331 and 1345.

4. This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C.§ 1367(a).

5. Venue lies in the Western District of Virginia, Roanoke Division, under 42 U.S.C. § 2000e-5(f) (3) because the unlawful employment practices documented in this Complaint occurred within the Commonwealth of Virginia.

## III.    PARTIES

6. Plaintiff, **Kelly Buck**, is a naturalized United States citizen and legal resident of the Commonwealth of Virginia.

7. Plaintiff worked for Defendant from June 30, 2022, until October 28, 2022.

8. Defendant unlawfully terminated Ms. Buck shortly after she reported discrimination on the basis of sex.

9. **Modine Manufacturing Company** ("Modine") is a Wisconsin corporation with its headquarters at 1500 Dekoven Ave., Racine, WI, 53403.

10. Ms. Buck worked at Modine's plant located at 1221 Magnolia Ave., Buena Vista, VA, 24416.

## IV. EXHAUSTION OF REMEDIES

11. On or about October 28, 2022, Ms. Buck was terminated from her position as Plant Superintendent at Modine's facility in Buena Vista, Virginia.

12. On or about December 23, 2022, Ms. Buck filed a Charge (**Exhibit 1**) with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant had discriminated against her based on sex. This Charge was brought within the 300 days provided under federal and state law and retaliated against her for complaining about this discrimination.

13. The Charge included a request to "dual file" it with the Virginia Council on Human Rights and that the Charge be investigated by both agencies.

14. On or about June 19, 2023, Ms. Buck asked the EEOC to issue a Notice of Right to Sue because more than 180 days had passed since he filed her Charge.

15. On or about June 22, 2023, the EEOC issued a Notice of Right to Sue (**Exhibit 2**) giving Ms. Buck 90 days to file suit against Defendant on the basis of the claims alleged in her Charge.

16. Ms. Buck now brings this Complaint within the time period permitted to do so to vindicate her rights under Title VII, the Virginia Human Rights Act, and Virginia common law.

## V. LEGAL FRAMEWORK

### A. Title VII of the Civil Rights Act of 1964

17. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq. forbids discrimination or retaliation on the basis of race, color, religion, sex, or national origin.

### B. Virginia's Human Rights Act, Va. Code Ann. § 2.2-3900, et seq.

18. Under Va. Code Ann. § 2.2-3905, "[i]t is an unlawful discriminatory practice for [a]n employer to [f]ail or refuse to hire, discharge, or otherwise discriminate against any individual

3

with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's … sex."

### C. Virginia's Common Law "Bowman Claim"

19. In Virginia, the at-will employment doctrine is not absolute. One exception is the "public policy exception," commonly referred to as a "Bowman claim."

20. To succeed on a Bowman claim, the employee must show that the statute falls within one of two categories: (1) the statute explicitly states that it expresses a public policy of Virginia; or (2) the statute is designed to protect the property rights, personal freedoms, health, safety, or welfare of the public and the employer violated that public policy and wrongfully discharged the employee for performing a duty under that statute or for refusing to engage in its violation.

21. The discharged employee must also show that he or she is within the class of persons the statute is designed to protect.

22. Under Virginia law, terminating an employee for internally reporting unlawful conduct is a recognized Bowman claim.

## VI. STATEMENT OF FACTS

23. Ms. Buck was hired on June 30, 2022, as a Plant Superintendent at Modine's Buena Vista, Virginia facility (the "Facility").

24. Ms. Buck is a 2012 West Point graduate with a Bachelor's degree in Psychology.

25. Ms. Buck was a three-time All American while studying at West Point and served as a Field Artillery Officer for five years following graduation.

26. After leaving the Army, Ms. Buck worked as an HR Generalist for Saint-Gobain and HR Supervisor for NVR, Inc.'s manufacturing plants while simultaneously completing coursework to earn her MBA in 2021.

27. Upon graduation, Ms. Buck was hired to work for Modine to oversee all plant operations, including seven supervisors and approximately 250 employees at the Facility.

28. By virtue of this hire, Ms. Buck replaced Brent Secrist who assumed the position of Human Resources Manager at Modine.

29. Around the same time, Modine hired Cindy Forbes to be the Focus Factory Manager at the Facility.

30. Ms. Forbes holds a Bachelor of Science in Business and has previously served as Manufacturing Manager, Operations Manager, and Plant Manager during her ten years at Lear Corporation.

31. Ms. Forbes also worked as Plant Manager and Improvement Manager at Consolidated Metco and Business Unit Manager at Cooper Crouse-Hinds prior to joining Modine.

32. As a result of hiring Ms. Buck and Ms. Forbes, Modine transitioned from male-dominated leadership at the Facility to a much more diverse environment.

33. This change in leadership was unsettling to Modine's Manufacturing Engineering Manager, Doug Penney, who has worked for Modine for over 31 years.

34. Following Ms. Forbes's hiring, Mr. Penny treated her with condescension and disdain despite being of equal rank.

35. Mr. Penney also had to regularly interact with Ms. Buck, and he treated her as <u>his</u> subordinate even though she reported to Ms. Forbes, not him.

36. Throughout Ms. Buck's employment with Modine, Mr. Penney regularly behaved and spoke to both Ms. Buck and Ms. Forbes in condescending and misogynistic terms.

37. On one occasion in July, Ms. Forbes approached Mr. Penney about a safety issue at the plant.

38. Ms. Forbes noticed that interior temperatures for employees working near ovens used to bake paint off of hanging hooks reached nearly 100 F° because the oven doors were being left open while the hooks cooled.

39. Rather than complying with this order to alleviate a safety concern, Mr. Penney turned to Ms. Forbes and, using a condescending tone and pacing as if talking to a dumb child, began explaining the principle of heat conservation.

40. Ms. Forbes did not make eye contact with Mr. Penny during his very long and slow explanation, a technique that Mr. Penney often employed during morning meetings when he patronized Ms. Buck and Ms. Forbes.

41. Matt Niebur, Modine's Plant Manager, was present during this shockingly misogynistic behavior yet said nothing.

42. On or about July 30, 2022, Mr. Niebur conducted 30-day follow-ups with Ms. Buck and Ms. Forbes to ask how things were going during their first month.[1]

43. During this meeting, Ms. Buck told Mr. Niebur about several instances in which Mr. Penney had displayed patronizing and misogynistic behaviors towards her and Ms. Forbes.

44. Ms. Buck specifically reported Mr. Penney's behavior during the mid-July safety concern Ms. Forbes presented and at morning meetings.

---

[1] 60-day and 90-day meetings were scheduled with Ms. Buck but never took place.

45. Rather than taking Ms. Buck's concerns seriously, Mr. Niebur stated, "Doug has always been like that" because "Doug tends to over-explain things because he doesn't believe other people understand what's going on at the company, especially newer people."

46. Ms. Buck might have agreed with Mr. Niebur's explanation for Mr. Penney's behavior except for the fact that Ms. Buck had not seen Mr. Penney express that sort of behavior towards Shannon Craighead, a newly-hired <u>male</u> employee.

47. Ms. Buck repeated her observations that Mr. Penney treated Ms. Forbes and herself far worse than Mr. Craighead and that he did so because they were female and Mr. Craighead was male.

48. Again, rather than validating and taking Ms. Buck's concerns seriously and reporting the issue to Human Relations, Mr. Niebur stated he did not think Mr. Penney had an issue with women.

49. A few days later, Ms. Buck told Ms. Forbes she had complained to Mr. Niebur about Mr. Penney's sexist behavior toward them as female employees.

50. Ms. Forbes thereafter told Ms. Buck that Mr. Niebur was required to make an official report to Human Relations.

51. When Ms. Forbes brought her own concerns to Mr. Niebur, Ms. Forbes reported that Mr. Niebur had stated, "Doug's been like this for the last 11 years. That's just the way Doug is."[2]

52. In mid-August 2022, Mr. Penney again used his typical condescending tone and approach when speaking with Ms. Buck in his office.

---

[2] It is unclear whether Mr. Niebur ever reported either of these reports of sexist behavior to Modine's Human Resources department.

53. Following that discussion, Ms. Buck told Mr. Penney she respectfully disagreed with the point he was making and found his tone to be patronizing and inappropriate.

54. Mr. Penney became very defensive and denied behaving any differently toward Ms. Buck or Ms. Forbes than he treated Modine's male executives.

55. Following this conversation, Ms. Buck told Ms. Forbes that she had confronted Mr. Penney directly about this issue.

56. On another occasion in early October 2022, Mr. Penney approached Ms. Buck while setting up lockers on the floor.

57. Mr. Penney ordered Ms. Buck to move the lockers to align with a yellow line on the floor.

58. Ms. Buck told Mr. Penney that she was doing as she was instructed.

59. Mr. Penney responded in an exaggeratedly slow voice "this is the yellow line."

60. Ms. Buck told him she understood what line he was talking about and directed him to speak to Ms. Forbes about the locker positioning to end the conversation.

61. Following this incident, Ms. Buck and a male employee, Chris Collins,[3] were sitting in Ms. Forbes's office when Ms. Buck stated she believed Mr. Penney treated Ms. Forbes and herself badly because he did not know how to work with women.

62. Ms. Forbes agreed that may be why Mr. Penny treated them poorly and also why Mr. Penny and Dwight Shanks had told Mr. Collins he should not work so closely with the female executives.

63. Around lunchtime on October 6, 2022, Mr. Niebur stopped by Ms. Buck's office and asked her what she was upset about.

---

[3] This employee has no relation to Plaintiff's attorney in this matter with the same name.

64. Ms. Buck responded she was bothered by the way Mr. Niebur treated the complaints of another female[4] at Modine compared to the way he dismissed her concerns.

65. Mr. Niebur angrily walked away without responding.

66. The next morning, October 7, 2022, Mr. Niebur summoned Ms. Buck to his office.

67. Ms. Buck notified Ms. Forbes of the meeting and stated she was planning to file an ethics complaint about sexism she experienced at Modine and Mr. Niebur's refusal to correct the situations.

68. When Ms. Buck arrived at Mr. Niebur's office, she discovered no one else was present and Mr. Niebur had not informed Ms. Buck's direct supervisor, Ms. Forbes, that he was going to speak with Ms. Buck.

69. Mr. Niebur told Ms. Buck he did not think it was appropriate the way she had confronted him about sexism at Modine.

70. Ms. Buck reminded Mr. Niebur they had previously discussed Mr. Penney's misogyny and that it was still going on even after she had reported it to him.

71. Mr. Niebur told Ms. Buck that Mr. Penney was "just trying to be helpful" when he attempted to explain things but that he could discuss the problem with Mr. Penney and let him know Ms. Buck did not find the behavior helpful.

72. Ms. Buck responded that she had already expressed to Mr. Penney she did not appreciate his tone and behavior when he spoke to her.

73. Mr. Niebur told Ms. Buck that Mr. Penney was at least trying to be helpful and that Ms. Buck's "sarcastic" complaining was "rotting the plant from the inside out."

---

[4] This female employee was more submissive and did not voice concerns about the way women were treated at Modine.

9

74. On the afternoon of October 28, 2022, Mr. Niebur summoned Ms. Buck to his office for a "difficult conversation."

75. Brent Secrist from Human Resources was already there when Ms. Buck arrived.

76. Ms. Buck was surprised to see Mr. Secrist at the meeting but not Ms. Forbes, Ms. Buck's direct supervisor.

77. Mr. Niebur told Ms. Buck she was being terminated for "behavioral issues."

78. Ms. Buck was confused and asked what behaviors Mr. Niebur was referring to.

79. Mr. Niebur stated they had a meeting about the issues and that "several other people" had already spoken to her about them as well.

80. Ms. Buck responded, "no one else has spoken to me about my behavior, so I'm a little confused about what behaviors you are talking about."

81. Mr. Niebur continued that he "had already had a meeting with you" about the behaviors and that he "wasn't going to get into it here."

82. Ms. Buck told Mr. Niebur and Mr. Secrist that the only meeting she and Mr. Niebur had about her "behavior" was when she confronted him about Mr. Penney's continued misogynistic treatment of her.

83. Mr. Secrist's expression suggested he was surprised by Ms. Buck's comments regarding the misogynistic treatment she had endured.

84. Ms. Buck was thereafter terminated and offered a 1-month severance to waive all claims against Modine and its agents.

85. Ms. Buck rejected that offer.

## VII.  CAUSES OF ACTION

### COUNT I
### Defendant Discriminated Against Plaintiff on the Basis of Her Sex
### in Violation of Title VII, 42 U.S.C. § 2000e-2(a)

86. Plaintiff re-alleges and incorporates by reference paragraphs 1-85 as if fully set forth herein.

87. Plaintiff was at all times material hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq., prohibiting discrimination or harassment on the basis of sex.

88. Defendant is, and at all times material hereto was, an employer within the meaning of 42 U.S.C. § 2000e-b and as such was prohibited from discriminating against Plaintiff on the basis of sex as set forth in 42 U.S.C. § 2000e-2(a).

89. Plaintiff is female and is therefore a member of a protected class within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq.

90. Defendant discriminated against Plaintiff on the basis of her sex in violation of Title VII by engaging in a continuing course of conduct, which included, but is not limited to, the following acts:

   a. Mr. Penney's failure to show the same respect to Ms. Buck as he did to male executives;

   b. Mr. Penney treated Ms. Buck as _his_ subordinate even though she reported to Ms. Forbes;

   c. Mr. Penney's continued misogynistic tone and behavior not only towards Ms. Buck, but also Ms. Forbes thereby showing his disdain towards female executives;

11

    d. Mr. Penney's refusal to make eye contact with either Ms. Buck or Ms. Forbes when he patronized these female executives during meetings;

    e. Mr. Niebur callously responding, "Doug has always been like that," regarding Ms. Buck's first complaint of the sexist treatment she experienced. Worse, Mr. Niebur attempted to justify Mr. Penney's behavior because Mr. Penney didn't "believe new employees know what's going on at the company." This was a lackluster attempt as Mr. Penney <u>did not</u> show the same tone and behavior towards Shannon Craighead, a newly hired <u>male</u> employee;

    f. Mr. Niebur's failure to report Ms. Buck's concerns about the sex discrimination she raised, as he was required to do;

    g. Mr. Niebur compared Ms. Buck's complaints as being "sarcastic" and her reported sexism was "rotting the plant from inside out;"

    h. Mr. Niebur's refusal to confront Mr. Penney regarding his behavior towards Ms. Buck and Ms. Forbes;

    i. Mr. Niebur angrily walked away without responding to Ms. Buck's complaints on October 6, 2022.

91. Plaintiff's protected status – Female – was a motivating factor for this discriminatory conduct.

92. Plaintiff's supervisors were aware of this overtly discriminatory treatment because they participated in it.

93. Defendant ratified Mr. Penney's conduct by failing to remedy, acknowledge, or even report Ms. Buck's complaints regarding the sex discrimination she faced.

94. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until she is reinstated to her previous position as Plant Superintendent at Modine's Buena Vista, Virginia location.

95. Under 42 U.S.C. § 2000e-5, Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

### COUNT II
### Defendant Retaliated Against Plaintiff for Opposing Unlawful Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

96. Plaintiff re-alleges and incorporates by reference paragraphs 1-95 as if fully set forth herein.

97. Plaintiff reported sex-based discrimination to which she was subjected to by employees of Defendant. These acts included:

   a. Reporting Mr. Penney's patronizing and misogynistic behaviors to Mr. Niebur directly during her 30-day follow-up;

   b. Expressing to Mr. Penney directly that she did not appreciate his misogynistic tone or behavior towards her and that he treated her differently than male executives;

   c. On October 6, 2022, Ms. Buck reported to Mr. Niebur that he did not treat Ms. Buck's complaints seriously. Mr. Niebur ignored Ms. Buck's concerns;

   d. On October 7, 2022, Ms. Buck notified Ms. Forbes that she was planning to file an ethics complaint about the sexism she experienced;

   e. During the meeting on October 7, 2022, Ms. Buck again reported directly to Mr. Niebur Mr. Penney's misogynistic behavior. Again, instead of taking these

13

complaints seriously and investigating the situation, Mr. Niebur claimed Mr. Penney was "just trying to be helpful," and accused Ms. Buck's "sarcastic" complaints were "rotting the plant from the inside out."

98. In doing so, Plaintiff engaged in protected activity by opposing a practice made unlawful under Title VII.

99. In response to Plaintiff's protected activity, Defendant retaliated against her by terminating her under the pretext of "behavioral issues."

100. The only "behavioral issues" Ms. Buck was aware of were her reports of sexism at Modine. When Ms. Buck asked for Mr. Niebur to clarify the specific behavioral issues, he instead responded that he, "had already had a meeting with [Ms. Buck]" about the behaviors and that he "wasn't going to get into it here."

101. The close temporal proximity between Ms. Buck's protected activity and her termination supports a very strong inference of causation.

102. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until she is reinstated to her previous position Plant Superintendent at Modine's Buena Vista, Virginia location.

103. Under 42 U.S.C. § 2000e-5, Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

### COUNT III
### Defendant Discriminated Against Plaintiff on the Basis of Her Sex in Violation of Va. Code Ann. § 2.2-3905

104. Plaintiff re-alleges and incorporates by reference paragraphs 1-103 as if fully set forth herein.

105. Plaintiff was at all times material hereto an employee of Defendant covered by the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900, et seq., prohibiting discrimination or harassment on the basis of sex.

106. Defendant is, and at all times material hereto was, an employer within the meaning of Va. Code Ann. § 2.2-3905 and as such was prohibited from discriminating against Plaintiff on the basis of sex as set forth in Va. Code Ann. § 2.2-3905(B).

107. Plaintiff violated Va. Code Ann. § 2.2-3905(B) by engaging in the acts listed in paragraph 90 of this Complaint.

108. Plaintiff's protected status – Female – was a motivating factor for this discriminatory and harassing conduct.

109. Plaintiff's supervisors were aware of this overtly discriminatory treatment because they participated in it.

110. Defendant ratified Mr. Penney's conduct by failing to remedy, acknowledge, or even report Ms. Buck's complaints regarding the sex discrimination she faced.

111. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until she is reinstated to her previous position as Plant Superintendent at Modine's Buena Vista, Virginia location.

112. Under Va. Code Ann. § 2.2-3908(B), Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

## COUNT IV
## Defendant Retaliated Against Plaintiff for Opposing Unlawful Discrimination in Violation of Va. Code Ann. § 2.2-3905

113.   Plaintiff re-alleges and incorporates by reference paragraphs 1-112 as if fully set forth herein.

114.   Plaintiff engaged in the protected activities outlined in paragraph 97 by opposing a practice made unlawful under the Virginia Human Rights Act.

115.   In response to Plaintiff's protected activity, Defendant retaliated against her by terminating her under the pretext of "behavioral issues."

116.   As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial.  Plaintiff will continue to lose wages until she is reinstated to her previous position as Plant Superintendent at Modine's Buena Vista, Virginia location.

117.   Under Va. Code Ann. § 2.2-3908(B), Plaintiff is entitled to recover compensatory damages, punitive damages, declaratory and injunctive relief, attorney fees, costs, and interest.

## COUNT V
## Defendant Retaliated Against Plaintiff for Reporting Violations of State and Federal Law in Violation of Va. Code Ann. § 40.1-27.3

118.   Plaintiff re-alleges and incorporates by reference paragraphs 1-117 as if fully set forth herein.

119.   Plaintiff reported, in good faith, violations of state and federal law when she complained to Mr. Niebur, Mr. Penney, and Ms. Forbes as outlined in paragraph 97.

120.   As a direct and proximate cause of Plaintiff's good faith efforts to oppose Defendant's unlawful acts, Defendant terminated her employment.

121. The pretexts invented to support Plaintiff's termination are objectively and verifiably false.

122. Plaintiff lost her job and source of income and benefits as a result of opposing Defendant's unlawful conduct.

123. Under Va. Code Ann. § 40.1-27.3(C), Plaintiff is entitled to reinstatement and "compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

## COUNT VI
### Bowman Claim under Virginia Common Law

124. Plaintiff re-alleges and incorporates by reference paragraphs 1-123 as if fully set forth herein.

125. Under Virginia law, an at-will employee asserting a wrongful discharge claim must identify a Virginia statute establishing a public policy that was violated by the employer.

126. Va. Code Ann. § 2.2-520(A) states,

> <u>It is the policy of the Commonwealth of Virginia to provide for equal opportunities throughout the Commonwealth to all its citizens, regardless of</u> race, color, religion, national origin, <u>sex</u>, pregnancy, childbirth or related medical conditions, age, sexual orientation, gender identity, disability, familial status, marital status, or status as a veteran <u>and, to that end, to prohibit discriminatory practices with respect to employment</u>, places of public accommodation, including educational institutions, and real estate transactions by any person or group of persons, including state and local law-enforcement agencies, in order that the peace, health, safety, prosperity, and general welfare of all the inhabitants of the Commonwealth be protected and ensured.

(Emphasis added.)

127. Moreover, Va. Code Ann. § 2.2-3905(B)(1)(a) states,

> It is an unlawful discriminatory practice for [a]n employer to [f]ail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's . . . sex.

128. The Commonwealth has forcefully established a clear public policy against sex-based discrimination and has proclaimed such behavior unlawful.

129. In addition to discriminating against Ms. Buck by engaging in the acts described in paragraph 90, Defendant also retaliated against Plaintiff by terminating her shortly after Ms. Buck complained to Mr. Niebur, Mr. Penney, and Ms. Forbes as outlined in paragraph 97.

130. In response, Defendant retaliated against Ms. Buck as a direct result of Ms. Buck's efforts to oppose this unlawful discrimination.

131. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until she is reinstated to her previous position as Plant Superintendent at Modine's Buena Vista, Virginia location.

132. Plaintiff is also entitled to punitive damages of up to $350,000 under Bowman v. State Bank of Keysville, 229 Va. 534 (1985) and the common law of the Commonwealth of Virginia.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kelly Buck prays that judgment be entered in her favor and against the Defendant as follows:

a. That Plaintiff be reinstated to Plant Superintendent at Modine's Buena Vista, Virginia location she previously held or be paid an appropriate amount in front-pay in lieu of reinstatement;

b. That Defendant pay compensatory damages for all lost wages, bonuses, benefits, and promotions Plaintiff lost and continues to lose as a result of Defendant's unlawful termination until she is reinstated as Plant Superintendent at Modine's Buena Vista, Virginia location.

  c. That Defendant pay punitive damages in an amount not to exceed $300,000 pursuant to Title VII, 42 U.S.C. § 2000e-2(a) for unlawfully discriminating against Plaintiff on the basis of her sex;

  d. That Defendant pay punitive damages in an amount not to exceed $350,000 pursuant to <u>Bowman v. State Bank of Keysville</u>, 229 Va. 534 (1985) and the common law of the Commonwealth of Virginia for unlawfully terminating Plaintiff;

  e. That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to Title VII, 42 U.S.C. § 2000e-5, and Va. Code Ann. § 40.1-27.3;

  f. That Plaintiff be awarded pre-judgment and post-judgment interest; and

  g. That the Court award such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

          KELLY BUCK

         By:   */s/ Mia Yugo*
           Mia Yugo
           *Counsel for Plaintiff*

Mia Yugo (VSB No. 92975)
Christopher E. Collins (VSB No. 90632)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
mia@yugocollins.com
chris@yugocollins.com

*Counsel for Plaintiff*